## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FAIRCHILD CORPORATION, et al., | ) | Case No. 09-10899 (CSS) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| _____ | ) | |
| THE FAIRCHILD LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 10-51634 (CSS) |
| | ) | |
| STATE OF NEW YORK and the | ) | Adv. Pro. No. 10-50944 (CSS) |
| NEW YORK STATE DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Defendants. | ) | |

Andrew M. Cuomo
New York State Attorney General
Audrey V. A. Bullen
Assistant Attorney General, of Counsel
New York State Department of Law
Real Property Bureau
The Capitol
Albany, New York 12224

Counsel for State of New York and
New York State Department of
Transportation

Mary F. Caloway
Mona A. Parikh
Buchanan Ingersoll & Rooney PC
1000 West Street, Suite 1410
Wilmington, DE  19801

-and-

Neal L. Wolf
Karen M. Borg
Butler Rubin Saltarelli & Boyd LLP
70 West Madison, Suite 1800
Chicago, IL  60602

Counsel for the Fairchild
Liquidating Trust

Dated: July 29, 2011

Sontchi, J. _____

## OPINION[1]

## INTRODUCTION

Fairchild Liquidating Trust ("the Trust") filed these adversary proceedings against the State of New York and the New York Department of Transportation ("NYSDOT") seeking damages for breach of contract and asserting various takings claims. New York and NYSDOT filed motions to dismiss (the "Motions") asserting two alternative arguments: (1) New York's Eleventh Amendment sovereign immunity bars the adversary proceedings against New York and NYSDOT; and (2) the Court should permissively abstain from hearing the matter. However, as explained below, the Court will grant the Motions without addressing these arguments because this Court lacks subject matter jurisdiction over this action, which were filed after the confirmation of the Chapter 11 plan that did not specifically provide for retention of jurisdiction over the matter.

## JURISDICTION

A bankruptcy court has jurisdiction to determine whether it has subject matter jurisdiction over an adversary proceeding filed in a case before the court.[2] The motion to dismiss for lack of subject matter jurisdiction is filed under Federal Rule of Civil

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2] *In re BWI Liquidating Corp.*, 437 B.R. 160 (Bankr. D. Del. 2010) (citing *Chicot County Drainage Dist. V. Baxter State Bank*, 308 U.S. 371 (1940)).

Procedure 12, which apples to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012.[3]

**STATEMENT OF FACTS**

### A. Background

The Fairchild Corporation and 60 of its affiliates (the "Debtors") filed Chapter 11 in 2009.  One or more of the Debtors own a 56-acre tract of land (the "56-acre property") and a 19.26-acre property (the "19-acre Property and, collectively with the 56-acre Property, the "Properties"), both adjacent to an airport in Suffolk County, New York. In 2000, the NYSDOT entered into a series of agreements (the "Agreements") with the Debtors regarding the 56-acre Property. The Agreements provided for the sale of the 56-acre Property to the NYSDOT at a price of $4.5 million contingent upon the Debtors completing certain modifications to the subject property. Pursuant to the Agreements, the Debtors spent approximately $3 million in modifying the 56-acre Property. Before the Debtors could complete the modifications, however, the NYSDOT was required file maps of the parcel in the Suffolk County Clerk's office, which would vest title to the 56-acre Property to the NYSDOT. To date, the maps have not been filed.

In 2002, pursuant to a purchase agreement between the Debtors' predecessor-in-interest and a third party, the Debtors began to seek the necessary permits to begin a development project on the 19-acre Property. Although the NYSDOT recommended relocation of that project due to its proximity to the airport, the Town Zoning Board of

---

[3] Fed. R. Bankr. P. 7012.

3

Appeals approved the permits required for the project as did the Federal Aviation Administration.

After receiving these approvals, the Debtors applied to the NYSDOT for work permits, which were denied for various reasons. The Debtors filed a petition in the Supreme Court of Suffolk County challenging the permit denials and the Court ordered the NYSDOT to issue the permits. The NYSDOT appealed the Supreme Court's order and the Supreme Court Appellate Division affirmed and remanded the decision to allow the NYSDOT to reconsider the permit application. The Debtors submitted several studies to support reconsideration of the work permits and the NYSDOT responded by requiring the Debtors to address several new issues before the NYSDOT would issue the permits. To date, the NYSDOT has not issued the permits and the 19-acre Property remains undeveloped and cannot be sold under the purchase agreement.

Shortly after the Debtors' filing of Chapter 11, this Court entered an order confirming the Debtors' plan of liquidation, which provided for the transfer of the Debtors' consolidated assets, including the Agreements and Properties, and liabilities to the Trust. After the plan became effective, this Court granted the NYSDOT limited relief from the automatic stay to allow the recordation of the maps. However, the NYSDOT has not recorded the maps.

### B.  Procedural Posture

The Trust initiated the above-captioned adversary proceedings by filing two complaints against the NYSDOT and New York State, asserting claims for breach of contract, *per se* taking, *de facto* taking, regulatory taking, and temporary taking with

regard to the Properties. The Trust alleges that the failure of the defendants to record the maps and to issue the permits prevents the beneficial use of the Properties by the Trust and is causing the Trust to bear the costs associated with maintaining the Properties. The Trust also claims that the recovery from these adversary proceedings will allow the Trust to increase the amount of payments to the more than 4,500 creditors that have filed claims.

The NYSDOT and New York responded by filing motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction based on sovereign immunity and, alternatively, for permissive abstention pursuant to 28 U.S.C. 1334(c)(1). In asserting that the adversary proceedings are barred by the sovereign immunity granted by the Eleventh Amendment to the U.S. Constitution, the defendants argue that Article I of the Constitution and, consequently, § 106 of the Bankruptcy Code, cannot be used to abrogate the sovereign immunity of a State.  The defendants further argue that they have only waived the State's immunity to breach of contract law suits and property takings by eminent domain on the sole condition that the lawsuits are brought in the New York Court of Claims.

Alternatively, the defendants argue that, if the Court finds it has subject matter jurisdiction, it should permissively abstain from hearing the matter for several reasons such as: the proceeding is not necessary for the administration of the estate; state law issues predominate any bankruptcy issues; eminent domain law is specialized; and the claims did not arise in the context of bankruptcy.

## LEGAL DISCUSSION

A court must dismiss an action if it lacks subject matter jurisdiction over the complaint.[4] A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) can either attack a complaint on its face or challenge the factual existence of subject matter jurisdiction.[5] In reviewing a facial attack, courts consider the allegations in the complaint to be true.[6] However, in challenges to the factual existence of subject matter jurisdiction, courts do not presume the truthfulness of a plaintiff's allegations and instead evaluate the merits of the jurisdictional claims.[7] Additionally, the plaintiff bears the burden of proving that the claim is properly before the court by showing that jurisdiction does in fact exist.[8]

Section 1334 of Title 28 sets forth the bankruptcy courts' subject matter jurisdiction.[9] Under 28 U.S.C. § 1334, district courts have "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11."[10] Although the district courts' power to refer cases is a matter of discretion, "courts 'routinely refer' most bankruptcy cases to the bankruptcy court."[11]

---

[4] Fed. R. Civ. P. 12(b)(1).

[5] *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

[6] *Id.*

[7] *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) ; *Mortensen*, 549 F.2d at 891.

[8] *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d. 1406, 1409 (3d Cir. 2005); *Dev. Fin. Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995).

[9] *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004).

[10] 28 U.S.C. § 1334(a), (b).

[11] *Id.* (quoting *Torkelson v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1175 (3d Cir. 1996)).

"Cases under title 11, proceedings arising under title 11 and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings."[12] A core proceeding is a proceeding that "'invokes a substantive right provided by title 11' or one that, 'by its nature, could arise only in the context of a bankruptcy case.'"[13] Pursuant to 28 U.S.C. §§ 157 and 158, bankruptcy courts have "full adjudicative power with regard to 'core' proceedings, subject to appellate review by the district courts," but must "'submit proposed findings of fact and conclusions of law to the district court'" regarding "non-core" proceedings.[14]

Although Congress intended to grant bankruptcy courts "comprehensive jurisdiction" to adjudicate matters regarding the bankruptcy estate, such jurisdiction must be limited.[15] The Third Circuit set forth a test to determine the boundaries of "related to" jurisdiction in *Pacor, Inc. v. Higgins*.[16] Under the *Pacor* test, bankruptcy courts have jurisdiction over proceedings related to a case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in

---

[12] *Id.*

[13] *Id.* at 162-3 (citing *Torkelson,* 72 F.3d at 1178).

[14] *Id.* at 162. As an aside, the Supreme Court's recent opinion in *Stern v. Marshall* is inapplicable here. *Stern v. Marshall*, 131 S.Ct. 2594 (2011). The issue in *Stern v. Marshall* was when, under the United States Constitution, the bankruptcy court could enter a final judgment as opposed to proposed findings of fact and conclusions of law in a case where subject matter jurisdiction existed under 28 U.S.C. § 1334(a). *Id.* at 2608. As such, *Stern v. Marshall* is not a case about subject matter jurisdiction. Rather it addresses the power of the bankruptcy court to enter final orders, *assuming that subject matter jurisdiction exists*. This case is about whether subject matter jurisdiction exists. Thus, this court's power to enter a final order is not implicated.

[15] *Id.* at 163.

[16] 743 F.2d 984 (3d Cir. 1984).

bankruptcy."[17] Thus, bankruptcy courts will have jurisdiction if there is a possibility, however remote, that the "outcome could alter the debtor's rights, liabilities, options, or freedom of action" and has any impact on the administration of the estate.[18]

However, following the confirmation of a plan, the scope of jurisdiction narrows because bankruptcy courts retain jurisdiction over the bankruptcy estate, which ceases to exist once the plan is confirmed.[19] Section 1141(b) of the Bankruptcy Code provides that upon confirmation of the plan all property of the estate vests in the reorganized debtor, unless otherwise stated in the plan or confirmation order.[20] Generally, the bankruptcy court only retains jurisdiction over issues regarding the confirmed plan and any cause of action that arises post-confirmation belong to the reorganized debtor.[21]

If taken literally, a bankruptcy court lacks subject matter jurisdiction over all post-confirmation claims as the non-existent bankruptcy estate cannot be affected by a post-confirmation dispute.[22] However, courts do not apply the *Pacor* test so stringently as to bar post-confirmation jurisdiction, and instead apply various standards in determining whether post-confirmation jurisdiction exists.[23] The Third Circuit found that the common issue underlying the various standards is whether the claim bears a

---

[17] *Id.* at 994.

[18] *Id.*

[19] *In re Craig's Stores of Texas, Inc.*, 247 B.R. 652, 654 (S.D. Texas 2000).

[20] 11 U.S.C. § 1141(b).

[21] *Craig's Stores*, 247 B.R. at 654.

[22] *Resorts Int'l*, 372 F.3d at 165.

[23] *Id.* at 165-6.

"close nexus" to the bankruptcy plan or proceedings that sufficiently upholds the bankruptcy court's "related to" jurisdiction.[24]

"Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus."[25] However, the possibility of increasing the assets of a trust and distribution to creditors does not necessarily create a close nexus that would confer jurisdiction on the bankruptcy court.[26] The scope of the bankruptcy court's post-confirmation jurisdiction would be unlimited if the potential gain or loss of assets alone was sufficient to confer bankruptcy court jurisdiction.[27] Although a post-confirmation adversary proceeding may "promote the efficient distribution of trust assets to creditors," it is insufficient in and of itself to confer jurisdiction upon the bankruptcy court.[28]

As courts must apply the *Pacor* test "regardless of when the conduct alleged in the complaint occurred," the timing of the alleged conduct is not to be considered in the determination of a close nexus.[29] Thus, claims based on pre-petition conduct that were asserted post-confirmation, but could have been brought prior to confirmation lack a nexus sufficient to confer jurisdiction upon the bankruptcy court.[30] Accordingly, a

---

[24] *Id.* at 166-7.

[25] *Id.* at 167.

[26] *Id.* at 170; *Craig's Stores,* 247 B.R. at 655.

[27] *Resorts Int'l.,* 372 F.3d at 170; *Craig's Stores,* 247 B.R. at 655.

[28] *BWI Liquidating Corp.,* 437 B.R. at 168.

[29] *Id.* at 165 (quoting *Geruschat v. Ernst & Young LLP (In re Seven Fields Dev. Corp.),* 505 F.3d 237, 265 (3d Cir. 2007)).

[30] *See BWI Liquidating Corp.,* 437 B.R. at 165; *Craig's Stores,* 247 B.R. at 652.

breach of contract claim based on pre-petition conduct filed post-confirmation belongs to the reorganized debtor, without regard to when and how the claim arose.[31]

Furthermore, parties cannot create bankruptcy court jurisdiction by consent or waiver.[32] A plan provision that preserves bankruptcy court jurisdiction post-confirmation, "specifically describes an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction" may create a sufficiently close nexus to the bankruptcy proceeding.[33] However, the inclusion of a general jurisdiction retention provision in the reorganization plan does not evidence a sufficiently close nexus that would retain "related to" jurisdiction.[34]

Here, the Trust filed the complaints post-confirmation even though the Agreements were created prepetition and the breach arguably occurred before confirmation of the plan. In the complaints, the Trust asserts that the funds recovered from these adversary proceedings will enhance the estate and allow for a greater distribution for over 4,500 creditors.  As explained by the Third Circuit, the potential to increase recovery for trust beneficiaries cannot be sufficient, in and of itself, to establish a close nexus because it would create a broader jurisdiction than Congress intended.[35] Even though adjudicating the matter in this Court would allow for the efficient

---

[31] *Craig's Stores*, 247 B.R. at 655.

[32] *Id.* at 652 (citing *Industrial Addition Ass'n v. Comm'n of Internal Revenue No. 118*, 323 U.S. 310, 312 (1945)).

[33] *In re AstroPower Liquidating Trust*, 335 B.R. 309, 325 (Bankr. D. Del. 2005).

[34] *Valley Historic Ltd. P'ship. v. Bank of New York,* 486 F.3d. 831, 837 (4th Cir. 2007); *BWI Liquidating Corp*, 437 B.R. at 166.

[35] *Resorts Int'l*, 372 F.3d at 169-170.

distribution to creditors, these factors are insufficient to create subject matter jurisdiction in this case.

Additionally, the Debtors' plan only included a broad general retention of jurisdiction provision and failed to mention the properties or breach of contract claim. Such a general retention of jurisdiction is insufficient for this Court to retain "related to" jurisdiction.[36]

**CONCLUSION**

For the foregoing reasons, the Court will grant the motion to dismiss for lack of subject matter jurisdiction. An order will be issued.

---

[36] *BWI Liquidating Corp.*, 437 B.R. at 166.